UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GUADALUPE O.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C18-1783 MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by discounting her subjective testimony, the lay testimony, and the opinions of treating providers. (Dkt. # 12.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

Plaintiff was born in 1976, has some college education, and has worked as a dairy milker, lumber labeler/wrapper, machine operator, and tutor. AR at 307. Plaintiff was last gainfully employed in May 2014. *Id*. at 306.

In June 2014, Plaintiff applied for benefits, alleging disability as of May 5, 2014. AR at 272-85. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id*. at 148-54, 157-68. After the ALJ conducted hearings in 2016 and 2017 (*id*. at 34-111), the ALJ issued a decision finding Plaintiff not disabled. *Id*. at 16-26.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since the alleged onset date.

Step two: Plaintiff's thyroid cancer is a severe impairment.

Step three: This impairment does not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: Plaintiff can perform light work with additional limitations: she can lift/carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk (with normal breaks) for a total of about 4 hours in an 8-hour workday, or do work tasks that allow for a sit/stand option. She can sit (with normal breaks) for about 6 hours in an 8-hour workday. She can frequently climb ramps and stairs. She cannot climb ladders, ropes, or scaffolds. She cannot perform at a production-rate pace (e.g. assembly line work or work where pace is set by machine), but is able to perform goal-oriented work (e.g. work of an office cleaner or work where pace is set by a worker rather than a machine). She may be off-task 10% over the course of an 8-hour day.

Step four: Plaintiff cannot perform her past relevant work.

Step five: As there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 16-26.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### IV. DISCUSSION

**A.  The ALJ Did Not Err in Discounting Plaintiff's Subjective Testimony**

The ALJ discounted Plaintiff's subjective allegations for multiple reasons: (1) the medical evidence does not support her allegation that her physical limitations are disabling; (2) the record does not support her allegation that her mental limitations are disabling; (3) her

activities contradict her allegations; and (4) she made inconsistent statements about the impact of her thyroid cancer on her ability to continue attending school. AR at 20-22.

Plaintiff contends that these reasons are not clear and convincing, as required in the Ninth Circuit. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). The Court will address each of the ALJ's reasons in turn.

*1. Physical Limitations*

The ALJ found that although Plaintiff's thyroid cancer resulted in a thyroidectomy in May 2014, the follow-up treatment notes indicate that the cancer and surgery did not lead to enduring limitations. AR at 21. Plaintiff does not directly challenge this line of reasoning, but contends that the ALJ erred in not considering other symptoms beyond her thyroid cancer and surgery, such as migraine headaches, heart palpitations, and fatigue. (Dkt. # 12 at 4.)

The Court agrees with the Commissioner (dkt. # 15 at 5-6) that Plaintiff has failed to point to evidence in the record showing that she was more limited than found by the ALJ as a result of headaches, palpitations, or fatigue. The treatment notes document that Plaintiff first complained to her doctor of headaches in April 2016,[3] and Plaintiff was prescribed a new medication for them in September 2016. AR at 544-45, 565-66, 568. Plaintiff was instructed to follow-up in four weeks or as needed after starting the medication in September 2016, but there are no records indicating that she did, and she did not mention headaches at subsequent office visits. *Id.* at 563-69. Although Plaintiff suggests that the fact that she did not mention her headaches at subsequent visits does not necessarily mean that they had resolved (dkt. # 16 at 5), this speculation does not amount to evidence that the headaches *did* persist, and the Court is not

---

[3] Plaintiff notes that she testified that she first experienced headaches during her cancer treatment in 2014. (Dkt. # 16 at 5 (citing AR at 77).) Plaintiff does not cite any corroborating treatment notes complaining of headaches before April 2016, however, and the Court is not aware of any.

required to assume the veracity of such speculation.

The record also shows that Plaintiff's palpitations were "moderately well-controlled" with medication and did not cause significant limitation. *See, e.g.*, AR at 521, 559, 566, 568. Plaintiff's treating doctor also opined that her fatigue caused by hypothyroidism would not cause significant limitation. *See id*. at 558-59. The treatment records indicate that Plaintiff was scheduled to follow-up in October 2016 with David Turk, M.D., regarding her hypothyroidism, but the record does not include any appointment notes. *Id*. at 567.

Thus, there is substantial evidence supporting the ALJ's finding that the medical record did not support the existence of disabling physical limitations, and that finding is affirmed.

2. *Mental Limitations*

The ALJ noted that although Plaintiff alleged disabling mental limitations, these allegations were not supported by the treatment record and the record instead suggested that Plaintiff had "no severe mental impairment" or "associated mental limitation[.]" AR at 21. Plaintiff argues that the treatment notes cited by the ALJ as showing normal mood were rendered in the context of appointments related to her physical health, and thus were not written to address Plaintiff's alleged mental symptoms. (Dkt. # 12 at 4-5.) That may be true, but the record contains no evidence that Plaintiff obtained any treatment for her mental health during the adjudicated period, and thus the notes cited by the ALJ were the only medical evidence in the record pertaining to Plaintiff's mental health.[4] There is no evidence that Plaintiff's alleged mental conditions caused her to be unable to seek treatment, and thus the ALJ did not err in contrasting

---

[4] Although Plaintiff contends that she received counseling after she realized her thyroid condition was impacting her mental health (dkt. # 16 at 6), there are no such counseling notes in the record. Plaintiff goes on to cite her hearing testimony that she had asked her primary care provider about psychotropic medication, but again, Plaintiff cites no corroborating treatment note referencing this discussion. (Dkt. # 16 at 6 (citing AR at 80-81, 88).)

Plaintiff's lack of treatment with the level of her complaints. *See Molina*, 674 F.3d at 1113-14. This is a valid reason to discount Plaintiff's allegations.

### *3. Activities*

The ALJ noted several discrepancies between Plaintiff's activities and her alleged limitations. AR at 21-22.[5] The ALJ noted that Plaintiff reported that she can go grocery shopping, babysit her grandchildren, drive, play games and pay bills on her phone, watch television and attend a concert at her daughter's high school, and the ALJ found that these activities contradict her allegations of an inability to be around people, as well as her alleged concentration deficits.[6] *Id*. at 20-21. These activities are indeed reasonably inconsistent with those alleged limitations, and therefore the ALJ did not err in discounting Plaintiff's testimony on that basis. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills").

### *4. Inconsistent Statements*

The ALJ cited an inconsistency regarding Plaintiff's ability to continue taking community college after her cancer diagnosis: at the hearing, Plaintiff cited her diagnosis and treatment as the reason why she stopped taking classes, but the ALJ noted that she told her doctors she was still taking classes months after her diagnosis and surgery. *Compare, e.g.,* AR at

---

[5] The Commissioner acknowledges that the ALJ erred in comparing Plaintiff's testimony to her June 2014 function report, because Plaintiff had informed the agency in August 2014 that her condition had worsened. (Dkt. # 15 at 8.) Thus, this order does not discuss the admittedly erroneous findings and instead focuses on those still in dispute. The erroneous findings are harmless, in light of the other valid reasons. *See Carmickle v. Comm'r of Social Sec.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

[6] Although Plaintiff cites authority suggesting that ALJs should be cautious about finding daily activities to be inconsistent with pain allegations (dkt. # 16 at 7-8), the ALJ did not find Plaintiff's activities to be inconsistent with a pain allegation, but instead found them to be inconsistent with her alleged social and concentration deficits.

ORDER - 6

77 *with id*. at 534-35. Plaintiff contends that this single inconsistency is not sufficient to reject her entire testimony (dkt. # 12 at 10), but this was not the only valid reason relied upon by the ALJ. Thus, Plaintiff has not shown that the ALJ erred in citing an inconsistency as a reason to discount her testimony. *See, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ appropriately considers inconsistencies when weighing plaintiff's testimony).

Thus, because the ALJ provided multiple valid reasons to discount Plaintiff's testimony, the ALJ's assessment of her testimony is affirmed.

### B. The ALJ Did Not Err in Discounting Certain Medical Opinions

Plaintiff challenges the ALJ's assessment of two medical opinions, written by her treating physician, Ione Adams, M.D., and treating mental health counselor, Virginia Baum, LMHC. The Court will address each disputed opinion in turn.

#### *1. Legal Standards*

In general, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn*, 495 F.3d at 631. A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more

than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

An ALJ may also consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors. *See* 20 C.F.R. § 404.1527(f). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment. *See Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

        2.        *Dr. Adams*

Dr. Adams completed a DSHS form opinion regarding the impact of Plaintiff's physical conditions in September 2016. AR at 558-62. Dr. Adams indicated that Plaintiff had started treatment for some of her conditions and needed follow up, and she indicated that her opinion would describe Plaintiff's limitations for only the next nine months. *Id*. at 560.

The ALJ acknowledged the limited duration of Dr. Adams' opinion, and also found her opinion that Plaintiff's migraine headaches caused a very significant interference with her ability to perform work activities to be inconsistent with the treatment record and Plaintiff's description of her activities. AR at 22. For these reasons, the ALJ gave Dr. Adams' opinion only "some weight." *Id*.

Plaintiff suggests that the ALJ erred in discounting Dr. Adams' opinion based on its limited duration, because "the record shows that [Plaintiff] has had the same symptoms and

limitations since 2014 and showed no real improvement." (Dkt. # 12 at 12.) She cites no authority for that proposition: Dr. Adams did not opine as such, and this contention does not account for the fact that, for example, the record documents that Plaintiff first complained to her doctor of migraines in April 2016. *See* AR at 544-45. Dr. Adams explicitly indicated that the limitations that she described would not persist for a year, and therefore the ALJ did not err in discounting the opinion as limited in duration. *See* 20 C.F.R. §§ 404.1505, 1509 (to meet definition of disability, claimant must have a severe impairment preventing work; impairment must have lasted or be expected to last at least twelve months); *Carmickle*, 533 F.3d at 1164 (finding that an ALJ did not err in discounting an opinion that was limited in duration to less than a year).

Even if the ALJ erred in finding Plaintiff's activities to be inconsistent with Dr. Adams' opinion regarding the impact of her migraines, the limited duration of Dr. Adams' opinion is alone a specific, legitimate reason to discount Dr. Adams' opinion. Although Plaintiff emphasizes that Dr. Adams did not indicate that her conditions were necessarily amenable to treatment (dkt. # 16 at 2-3), this fact merely underscores that Dr. Adams rendered her opinion during a time of treatment transition, where Plaintiff was just starting treatment for her migraines and her ovarian cysts and therefore the efficacy of that treatment was unknown. *See* AR at 560. Accordingly, the Court finds that the ALJ provided at least one specific, legitimate reason to discount Dr. Adams' opinion that Plaintiff's conditions limited her to sedentary work, and thereby affirms the ALJ's assessment of this opinion.

      *3.     Ms. Baum*

Ms. Baum completed a DSHS form opinion in September 2014. AR at 500-02. The ALJ noted that Ms. Baum did not describe any particular functional limitations, and provided no

opinion as to the impact on Plaintiff's physical functioning. *Id*. at 23 (citing *id*. at 501). The ALJ gave very little weight to Ms. Baum's opinion.[7]

Plaintiff disputes the ALJ's finding that Ms. Baum failed to specify functional limitations, noting that she opined that Plaintiff was limited to 1-10 hours/week working, looking for work, or preparing for work. (Dkt. # 12 at 14 (referencing AR at 500).) Ms. Baum did not specify work-related functional limitations that result in this restriction, however; she addressed only Plaintiff's current schooling and the problems she experienced at school as a result of her radiation treatment. AR at 500. This section falls short of a specific opinion as to Plaintiff's workplace limitations. Furthermore, the ALJ did acknowledge that portion of Ms. Baum's opinion (*id*. at 23), but also accurately found that Ms. Baum did not complete the section of the opinion that asked her about Plaintiff's physical workplace limitations. *Id*. at 23 (refencing *id*. at 501).

These are germane reasons to discount Ms. Baum's opinion. Even if the ALJ could have more thoroughly summarized Ms. Baum's opinion, Plaintiff has not shown that the ALJ overlooked evidence in Ms. Baum's opinion pertaining to Plaintiff's *longitudinal* ability to engage in work activity, particularly in light of Dr. Adams' subsequent opinion describing only mild impact of Plaintiff's thyroid condition, heart palpitations, and sleep disorder. *See* AR at 559. Any error in the ALJ's assessment is therefore harmless. *See Molina*, 674 F.3d at 1118-19 (indicating that an ALJ's failure to explicitly discuss a lay statement can be harmless where the statement is contradicted by more reliable medical evidence that the ALJ credited).

//

---

[7] The ALJ also mentioned confusion about Ms. Baum's credentials, which are not listed with her signature at the end of the opinion. *See* AR at 22, 502. There is an internal reference to Ms. Baum's status as a counselor (*id*. at 501), and thus the Commissioner agrees that Ms. Baum qualifies as an "other" medical source. (Dkt. # 15 at 13.)

### C. The ALJ Did Not Err in Discounting Lay Evidence

Plaintiff challenges the ALJ's assessment of a function report form completed by her daughter, Nilsha Valle. *See* AR at 314-21. The ALJ summarized Ms. Valle's comments and discounted them because they were written in July 2014, soon after Plaintiff's thyroidectomy and radioactive iodine treatment, but the record indicated that Plaintiff became more functional as she recovered. *Id*. at 23. Plaintiff contends that this is not a germane reason to discount Ms. Valle's statement. *See Dodrill,* 12 F.3d at 919.

Plaintiff argues that the ALJ erred in discounting Ms. Valle's statement as related to a period of acute impairment, because the record showed that her symptoms persisted. (Dkt. # 12 at 10-11.) The text of Ms. Valle's statement, however, explicitly refers to the effect of Plaintiff's radiation treatment and/or describes symptoms or limitations that had improved by the time of the administrative hearing, which supports the ALJ's interpretation. *See, e.g.*, AR at 314 (stating that Plaintiff cannot work due to side effects of radiation treatment), 317 (describing Plaintiff's limited ability to drive), 318 (describing Plaintiff's need to be in bed all day and her inability to go places), 320 (describing Plaintiff's ability to handle stress "not so well" "as of right now with the symptoms"). At the hearing, Plaintiff testified that she was able to drive (*id*. at 86), and Dr. Adams opined in September 2016 that the symptoms caused by Plaintiff's thyroid condition were now mild. *See id*. at 559. Even months before that, in January 2015, Plaintiff's treating provider had recommended that she engage in regular exercise, which suggests that she was no longer bedridden by that point. *See id*. at 520. For these reasons, the ALJ's reasoning is germane and is supported by substantial evidence. The ALJ's assessment of Ms. Valle's statement is affirmed.

//

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 29th day of July, 2019.

*/s/ M.J. Peterson*

MICHELLE L. PETERSON
United States Magistrate Judge